**Raoul MOODY, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 20627.**

United States Court of Appeals Ninth Circuit.

March 30, 1967.

Kenneth N. Rivera, Walnut Creek, Cal., for appellant.

Edwin L. Miller, U. S. Atty., Alan D. Sirota, Lawrence Turoff, Asst. U. S. Attys., San Diego, Cal., for appellee.

Before JONES, Judge of the United States Court of Claims,* and BARNES and JERTBERG, Circuit Judges.

JERTBERG, Circuit Judge:

Following trial to a jury on a two count indictment, appellant was convicted on both counts. The first count charged a violation of 21 U.S.C. § 174,—the knowing importation of approximately eight ounces of heroin, a narcotic drug, into the United States from Mexico. Count Two charged the concealment and transportation of said heroin in the United States knowing the same to have been unlawfully imported from Mexico. Appellant was committed to the custody of the Attorney General for a period of ten years on each count, the sentences to run concurrently.

Included in the indictment as co-defendants were Fermin Aguirre, and Sally Moody, the sister of appellant, who is alleged to have aided and abetted in the commission of the offenses charged against the appellant and Fermin Aguirre.

Prior to trial the District Court granted Aguirre's motion for severance of trial under Rule 14 of the Federal Rules of Criminal Procedure. At the conclusion of the government's case the District Court granted Sally Moody's motion for judgment of acquittal. Hence, appellant is the only party named in the indictment who is a party to this appeal which the District Court permitted to be taken *in forma pauperis.*

Appellant specifies that the District Court erred:

1. In denying appellant's motion for judgment of acquittal in that the evidence is insufficient to sustain the conviction because based solely on the uncorroborated testimony of an accomplice;

2. In the giving of an instruction embodying the last paragraph contained in 21 U.S.C. § 174 in that the evidence of appellant's possession of heroin was insufficient to justify the giving of such instruction;

3. In depriving appellant of a fair trial by admitting testimony, over appellant's objection, relating to:

(a) Appellant's prior possession of heroin;

(b) A .38 caliber revolver and cartridges found in appellant's automobile;

(c) The hearsay statement made by a third party; and

(d) In permitting the prosecutor to unfairly comment, in his argument, on appellant's failure to testify in his own behalf.

In view of the nature of the errors specified by appellant, it is necessary to summarize the testimony which was before the jury relevant to such claimed errors.

In determining whether or not there was sufficient evidence to establish appellant's guilt beyond a reasonable doubt, the evidence must be viewed in the light most favorable to sustain the conviction. Enriquez v. United States, 338 F.2d 165 (9th Cir. 1964).

The main witness for the prosecution was Fermin Aguirre whose trial was severed from the other two defendants. Aguirre testified that he had known appellant for a little over thirteen years, and that he shared an apartment with appellant in Los Angeles, California; he and appellant left Los Angeles in appellant's automobile and drove to Tijuana, Mexico;

---

* Marvin Jones, Senior Judge, United States Court of Claims, sitting by designation.

That on arrival in Tijuana the two went to a bar; shortly thereafter appellant left the bar while Aguirre remained behind; that appellant later returned with a third person, by name Larry or Lorenzo; all three left the bar and went to the east side of Tijuana near a prison; that during this trip a conversation took place in which Larry related an incident in which a narcotic informer had recently been killed;[1] that the three returned to Lorenzo's home and Lorenzo gave to each a sample of a substance which both appellant and Aguirre sniffed; that it looked and smelled like heroin; that Aguirre and Larry left and went to downtown Tijuana; that they returned to Larry's house; that appellant was inside the house and there were two men sitting in front of the house; that Aguirre remained outside and appellant called Aguirre to the side of the house; that Aguirre saw appellant put a glassine bag containing contraceptives in the air vent, under the hood, on the right hand side of appellant's car;

That Aguirre volunteered to drive the car across the border; that appellant told Aguirre not to snitch if he got caught and that Aguirre was to pick up appellant about one-half block beyond the border;

That Aguirre drove appellant's car across the border and was stopped and searched by the Border Inspectors; that the search revealed the heroin in the contraceptives in the glassine bag in the air vent of the car, and a loaded .38 caliber revolver and cartridges in the glove compartment;[2]

That on an occasion prior to the trip to Tijuana, Aguirre saw appellant in the possession of heroin.[3]

We first consider appellant's contention that the evidence is insufficient to sustain the conviction because based solely on the uncorroborated testimony of an accomplice. There is no dispute that Aguirre was an accomplice, and that the conviction of appellant rests upon the uncorroborated testimony of Aguirre.

■ It is clear from the many decisions of this court, of which are cited only the more recent, that a conviction in the Federal court can be based upon the uncorroborated testimony of an accomplice. Cheadle v. United States, 370 F.2d 314 (9th Cir. 1966); Quiles v. United States, 344 F.2d 490 (9th Cir. 1965); Lyda v. United States, 321 F.2d 788 (9th Cir. 1963); White v. United States, 315 F.2d 113 (9th Cir.) cert. denied 375 U.S. 821, 84 S.Ct. 58, 11 L.Ed.2d 55 (1963).

■ The foregoing rule applies even though there are inconsistencies in the accomplice's testimony, and even though the accomplice expected and hoped that his cooperation with the government might be rewarded by a lenient sentence, provided, however, that the testimony of the accomplice is not incredible or unsubstantial on its face. See Lyda v. United States, supra.

■ Bearing in mind that it is the function of the jury to determine the credibility of witnesses and the weight to be given to their testimony, and the limited role of an appellate court in a criminal appeal, we are unable to say that the testimony of Aguirre in the instant case was too shoddy, incredible or unsubstantial to support appellant's conviction.

We note in passing that the District Court instructed the jury that the testimony of Aguirre should be received with caution, weighed with great care, and that the jury should not convict the defendant on his unsupported testimony unless they believed, beyond a reasonable doubt, his uncorroborated testimony.

We next consider appellant's claim that the District Judge erred in reading to the jury the statutory presumption contained

---

1. Appellant's objection to the introduction of such statement was overruled.

2. Appellant's objection to this testimony, and to the introduction into evidence of the revolver and cartridges, was overruled.

3. Appellant's objection to the introduction of such testimony was overruled; later in the trial the District Court reversed its ruling; ordered such statements stricken; and admonished the jury to disregard the same.

in 21 U.S.C. § 174, authorizing conviction when a defendant is shown to have or to have had possession of the narcotic drug, unless the defendant explains the possession to the satisfaction of the jury.

It is argued that since appellant was never shown to have had actual possession of the heroin, that it was error for the District Court to instruct the jury with respect to the statutory presumption.

■ Possession may be actual or constructive, and constructive possession is sufficient to sustain a conviction. Dominion and control over the drug without physical custody has been deemed constructive as opposed to actual possession. United States v. Hernandez, 290 F.2d 86 (2d Cir. 1961); Rodella v. United States, 286 F.2d 306 (9th Cir. 1960). See also Quiles v. United States, supra; Anthony v. United States, 331 F.2d 687 (9th Cir. 1964); Arellanes v. United States, 302 F.2d 603 (9th Cir.) cert. denied, 371 U.S. 930, 83 S.Ct. 294, 9 L.Ed.2d 238 (1962).

■ The District Judge, in his instructions, carefully explained the meaning of actual possession and constructive possession. We believe that there is sufficient evidence in the record from which the jury could infer that appellant had dominion and control over the narcotic drug even though the same was in the actual possession of Aguirre. See Klepper v. United States, 331 F.2d 694 (9th Cir. 1964).

We now consider appellant's claim that it was prejudicial error on the part of the District Court to permit the introduction of testimony by Aguirre concerning the possession of heroin by appellant on an occasion prior to the trip to Tijuana.

The question asked of Aguirre by the prosecutor was whether Aguirre had ever seen the appellant in the possession of heroin prior to the trip to Tijuana. Appellant's counsel objected to the question. The objection was overruled, and Aguirre answered in the affirmative. Counsel for appellant then moved to strike the answer on the ground that it tended to show evidence of other offenses not set forth in the indictment; that no proper foundation had been laid; and that the answer was the conclusion of the witness. The Court informed the prosecutor that he would have to lay a foundation, to which the prosecutor responded that he would. The Court thereupon instructed the jury that it was not charged in the indictment that the appellant in the past had possession of heroin, and unless the prosecutor offered further testimony tying in the past possession of heroin by appellant with the charges set forth in the indictment, that the testimony concerning the prior possession of heroin would be stricken from the evidence.

Aguirre then testified that he knew that the substance in appellant's possession prior to the trip to Tijuana was heroin because he knew the characteristics of the smell of heroin; that the substance in appellant's possession smelled like heroin. There is no testimony as to the time or place of such incident except that it occurred prior to the trip to Tijuana.

Nothing further appears in the transcript concerning the prior possession except that on the following day of the trial, the District Court informed the jury as follows:

"Then finally, there was testimony by Mr. Aguirre that he had seen, I think he said, heroin in the possession of Raoul Moody. He may have said a powder, but I think he said heroin. I am going to strike that testimony for the reason that there was no foundation laid, there was no showing that Mr. Aguirre had sniffed that particular substance, that he had tested it in any way, that he had made any observations on it which would lead him to be able to draw the conclusion that it was heroin. As the matter now stands in the record it would be a pure guess on his part, and accordingly that testimony is stricken from the record and you will disregard it. Do you understand?"

In the course of his instructions to the jury the District Court stated:

"And that reminds me, and I want also to remind you, of the prior instruction I gave you, that I struck out certain testimony, the testimony of Mr. Aguirre that sometime prior to October 6th he had seen some powder or heroin, I forgot which, in the possession of the defendant, Raoul Moody. As you recall, I struck this out and told you to disregard it. I repeat it now only to tell you that you must erase this from your memory. It is not part of the evidence in the case."

■ If the Court erred in the initial admission of such testimony, we believe such error was cured by the later ruling, the admonition given during the trial to the jury to disregard the testimony, and finally the admonition contained in the instruction.

Next we consider the claimed error of the District Court in admitting into evidence, over appellant's objections, certain statements of a third party made in appellant's presence and testified to by Aguirre.

During Aguirre's direct examination he was asked if any conversation occurred near the prison at Tijuana when he, appellant and Larry were present. Over appellant's objection that the question called for hearsay and irrelevant testimony, Aguirre, in substance, testified that Larry stated that a person, described by him as a "rat", who had informed on narcotics smugglers had been killed for so doing and, "that the only way we could get caught is for somebody to snitch on both of us."

The questioned testimony was not offered for the purpose of proving the truth of what was said, i. e., that a "rat" was killed, and that the conduct of the participants could only be discovered if someone "snitched". Rather, such testimony was offered to show such statements were made in the presence of appellant. Whether or not such statements were made was subject to cross-examination by appellant's counsel.

In overruling appellant's objections the District Court stated:

" * * *; and we are not particularly concerned with the truth of the statements, because there is no issue being tried. But what was said may or may not have a bearing on the state of mind and the actions of the defendant."

■ In our view there was no error on the part of the District Court in admitting such testimony. The testimony is not hearsay. See McCormick, Evidence 464–465 (1954); 1 Wharton, Criminal Evidence 591 (12th ed. 1955); Murray v. United States, 10 F.2d 409, 411 (7th Cir. 1925); State v. Chamineak, 343 S.W.2d 153 (Mo.1961). Inferences from such testimony could properly be drawn that appellant had knowledge of the unlawful nature of the enterprise in which he was engaged. Such testimony would, therefore, be relevant.

Next we consider the ruling of the District Court in receiving into evidence over appellant's objection, the loaded revolver and cartridges which were found in the glove compartment of appellant's car when searched at the border, and the testimony of Aguirre relating thereto. Over objections of appellant's counsel, Aguirre testified that the loaded revolver and cartridges were the property of appellant; that he had seen the revolver in the glove compartment of appellant's car prior to the trip to Tijuana; that he knew that the revolver was loaded and knew that the loaded revolver was in the glove compartment on the trip from Los Angeles to Tijuana. A motion on the part of appellant's counsel to strike the testimony of Aguirre and the revolver and cartridges was denied. No further testimony appears in the record relating to the presence of the loaded revolver and the cartridges in the glove compartment of appellant's car. Aguirre testified that he received no instructions from the appellant relating to them, or their use.

In support of the rulings of the District Court with respect to the testimony of Aguirre, and the introduction into evi-

dence of the loaded revolver and cartridges, the government relies upon Klepper v. United States, supra. In that case the appellant was charged with illegally importing or smuggling marijuana, with concealing the illegally imported marijuana, and a third charge of smuggling into the United States a loaded .32 caliber pistol.

On Klepper's return to the United States from Mexico, the car in which he was riding and which was being driven by one Baumgardner, was stopped at the border. Both occupants of the car appeared to be nervous. They were individually searched, and the search revealed that Klepper was carrying a loaded pistol in his right front pants pocket. The points of the bullets had been cut in the form of a cross to create what are commonly called "dum-dum" bullets. A search of the car revealed packages of marijuana. The following statement appears in *Klepper*, supra, 331 F.2d at page 696:

"Previously, before the marijuana was found, when asked about the gun, Klepper stated (in explaining why he had cut the points of the bullets): 'If you are going to shoot anybody you might as well do a good job.' This was in the presence of Baumgardner."

During the course of the trial Klepper's defense counsel told the trial court Klepper's defense was that he didn't know about marijuana being in the car. The District Court then informed Klepper's counsel, out of the presence of the jury, as follows:

"THE COURT: Then I think it is admissible. If they claim they were innocent and had no knowledge of the marijuana, the fact that they had a loaded gun and that the bullets had been cut with a cross and one defendant said, 'If you're going to shoot somebody, you might as well—

"What was the word?

"THE WITNESS: 'You might as well do a good job.'

"THE COURT: —would indicate somebody engaged in a criminal venture and not an innocent man, with

contraband in the car. * * *." *Klepper*, supra, p. 699.

The District Court admitted the loaded gun into evidence together with the statement of Klepper above quoted, in order that the jury might consider whether or not Klepper's trip from Mexico was an innocent one in which he had no knowledge of the marijuana, or whether Klepper was engaged in an illegal venture and had the gun along for that purpose. See *Klepper*, supra, page 700.

In its brief the government states:

"In Klepper v. United States, 331 F.2d 694, the trial Court's opinion that having a loaded gun in the car being used for the transportation of heroin was an element the jury could consider to determine whether the venture was an innocent one or a criminal venture. This opinion of the lower Court was sustained by this Court on appeal."

The statement appearing in appellee's brief is not a fair statement of the facts or the holding in *Klepper*. In that case Klepper was charged with smuggling into the United States a loaded .32 caliber pistol. There is no such charge in the instant case. In *Klepper*, the pistol was carried on the person of Klepper; in the instant case the revolver was in the glove compartment of the car. In *Klepper*, there is Klepper's statement concerning the possible purpose for his possession of the pistol; in the instant case there is no statement on the part of the appellant, of any kind, concerning the revolver or its use. In *Klepper*, the District Court was informed that his defense would be that he didn't know anything about marijuana being in the car; in the instant case there is no statement of any kind made by appellant, let alone a statement to the District Court informing the court as to the nature of appellant's defense.

We believe that the questioned testimony of Aguirre was inadmissible and that the loaded revolver and the cartridges should not have been received into evidence. If appellant had testified that he did not know of the presence of the heroin in his car, or if there appeared in

the record an admissible statement of appellant that he was without knowledge of the presence of heroin in his car, we might then concede the possible propriety of the District Court's rulings, in order that the jury might consider such testimony in determining whether or not appellant was engaged in an illegal venture and had the revolver along for that purpose. Such, however, is not the situation presented by the record.

Finally, we consider appellant's contention that the prosecutor in his arguments to the jury unfairly commented on appellant's failure to testify in his own behalf. Although appellant concedes that the prosecutor did not comment directly upon appellant's failure to take the stand in his own behalf, the prosecutor did, on several occasions both in his opening and closing arguments, after commenting upon various parts of Aguirre's testimony, state that such testimony has not been "rebutted."

■ No objection by appellant was made to such remarks of the prosecutor, and no motions to strike such remarks appear in the record. Furthermore, we note that the District Judge instructed the jury that statements and arguments of counsel were not evidence and that the law does not compel a defendant to take the witness stand and testify, and "no presumption of guilt, no inference of guilt, no inference of any kind may be drawn from the failure of a defendant to take the stand and testify." In these circumstances error cannot be predicated on the questioned comments of the prosecutor.

Our final problem is to determine whether or not the error of the District Court in admitting the testimony of Aguirre concerning the revolver found in the glove compartment, and in admitting the revolver and the cartridges into evidence, is of such gravity as to require a reversal of appellant's conviction. Before discussing whether or not such error was prejudicial, more of the background of the case should be stated.

Aguirre testified that for some period of time prior to the trip to Tijuana, and at the time he was arrested, he was addicted to the use of narcotics and that it is his habit to use narcotics a couple of times a day, and that he was under the influence of narcotics at the time of his arrest, and that he felt the effects of withdrawal pains shortly after his arrest. He further testified that the first time he ever saw or met Larry was while he was in Tijuana on the day of his arrest.

We also note that there is no evidence of any kind in the record that appellant was the owner of the Cadillac automobile, and of the loaded revolver, and no evidence of the purchase of narcotics, or of the importation of the same into the United States except the testimony of Aguirre. There is no evidence in the record of any kind indicating the presence of the appellant in Mexico, or nearby, on the day of Aguirre's arrest except the testimony of Aguirre.

Thus, the error of the District Court must be viewed in light of the fact that the conviction of appellant rests wholly and solely upon the uncorroborated testimony of accomplice, Aguirre, who suffers a chronic addiction to the use of narcotics. It is in this context that the gravity of the error must be weighed.

The presence of the loaded revolver could only be regarded by the jury as indicating that the appellant was a bad man engaged in a criminal enterprise, who might shoot anybody who attempted to frustrate the illegal importation of heroin, although in the circumstances of this case the presence of the loaded gun was not relevant to any matter which the jury was called upon to decide. In his closing argument to the jury, the only relevance of the revolver was stated by the prosecutor to be "the relevance of the gun is important and it shows what type of people we are dealing with."

■ In all of these circumstances we are satisfied that the error was prejudicial, operated to deny appellant a fair trial, and compels a reversal of the judgment of conviction.

The judgment of conviction is vacated and the cause remanded to the District Court with instructions to grant appellant a new trial.