**UNITED STATES of America, Plaintiff-Appellee,**

v.

**James Edward JOHNSON, Defendant-Appellant.**

**Nos. 72–1804, 72–1805.**

United States Court of Appeals, Ninth Circuit.

Nov. 2, 1972.

---

Patricia M. Doyle (argued), San Diego, Cal., for defendant-appellant.

Lyn I. Goldberg, Asst. U. S. Atty. (argued), Stephen G. Nelson, Asst. U. S. Atty., Harry D. Steward, U. S. Atty., San Diego, Cal., for plaintiff-appellee.

Before WRIGHT and GOODWIN, Circuit Judges, and McGOVERN, District Judge.*

McGOVERN, District Judge:

Defendant was indicted, convicted and now appeals from the sentence entered upon his judgment of conviction for importing heroin into the United States from Mexico on November 18, 1971, in violation of 21 U.S.C. §§ 952, 960 and 963. He also appeals from a conviction on a three-count indictment charging him with the importation of heroin and cocaine into the United States and the possession of the heroin with the intention of distributing it, in violation of 21 U.S.C. §§ 952, 960, 963 and 841(a)(1). These last convictions arose out of an incident occurring on December 4, 1971. The cases were consolidated for trial to the Court and the defendant was tried and convicted along with a co-defendant, Barbara Jean Thornton.

Two separate transactions gave rise to these convictions.

*November 18, 1971.* Appellant and Miss Thornton, the codefendant, were arrested as they attempted to cross the border from Mexico into the United States. A border guard stopped the vehicle driven by the Appellant and requested identification of the Appellant and his passenger, the co-defendant. The guard stated that he noticed that the Appellant's hands were trembling "quite badly" as he attempted to remove his I.D. from his wallet, and that he possessed a methadone treatment card. He testified that Miss Thornton's hands "were trembling so badly she could not remove her I.D." from her purse. As a result of these observations, the guard asked the parties to pull the vehicle over to a secondary inspection area. From there, the Appellant's vehicle suddenly shot forward around some benches and away from the guard before it finally

* The Honorable Walter T. McGovern, United States District Judge for the Western District of Washington, sitting by designation.

came to rest. When the guards observed Appellant place something into his mouth, they pulled him from the car and unsuccessfully attempted to prevent him from swallowing the object. The guards testified to their observance of old and new "tracks" on the arms of the Appellant and Miss Thornton, to their drowsy appearance, pinpointed pupils, glassy eyes, and to a pushing motion by Miss Thornton in her crotch area. They thereupon decided to conduct a skin search of both persons. The search of Miss Thornton did not reveal a narcotic, but a subsequent pelvic examination was ordered at the suggestion of the Inspectress because she and one of the guards noticed that Miss Thornton was constantly pushing her fingers in the crotch area of her pants. That search produced a prophylactic containing heroine from Miss Thornton's body cavity.

In the meantime, an emetic was given to Appellant in an attempt to cause him to vomit. It was not successful, but a search of his personal effects revealed the telephone number of a known heroin distributor in Tijuana.

*December 4, 1971.* Appellant and Miss Thornton had again been in Mexico and were on their way back into the United States when they were stopped by the border guards who recognized them from the prior incident. After asking them to stop, the car with Miss Thornton at the wheel carromed forward. One guard notice that before the vehicle was stopped, a package was thrown out the driver's window. That package contained two prophylactics, one containing heroin and the other cocaine. The guards again noticed symptoms of heroin use as evidenced by trembling, needle marks, and a drowsy appearance. Miss Thornton admitted knowledge of obtaining this heroin and cocaine, but denied that Appellant knew of her possession of the substances.

At the time of trial, counsel for Miss Thornton unsuccessfully sought to suppress into evidence the heroin obtained from Miss Thornton's body cavity. Counsel for Appellant did not join in that motion. After the Motion to Suppress was denied, counsel for Appellant made a Motion for a Judgment of Acquittal. It was denied.

Appellant on this appeal raises for the first time the issue of the failure of the trial court to grant the Motion to Suppress the evidence of heroin obtained by the pelvic search of the body cavity of Miss Thornton. He argues that the strictures of the Fourth Amendment preclude such body cavity search unless there is a "clear indication" of possession of narcotics or a "plain suggestion" of smuggling and that there was no such indication or suggestion. Rivas v. United States, 368 F.2d 703 (Ninth Circuit 1966), Huguez v. United States, 406 F.2d 366 (Ninth Circuit 1969). He argues that the evidence thus admitted is therefore tainted and that his conviction must therefore be reversed. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

 Unless good cause is shown therefor, an appellant cannot raise the issue of suppression of evidence for the first time on appeal. Darden v. United States, 405 F.2d 1054 (Ninth Circuit 1969), Williams v. United States, 358 F.2d 325 (Ninth Circuit 1966), Rule 41 (e) of the Federal Rules of Criminal Procedure. No good cause has been shown here. In this case, the co-defendant raised the issue. In so doing, counsel for the co-defendant stated that the motion was "on behalf of defendant Barbara Thornton". Appellant did not join in that motion and is now precluded from raising it on appeal. Additionally, we conclude that the totality of circumstances and facts which prompted the body cavity search of Miss Thornton were clearly sufficient to indicate to the border guards, as they testified, that a smuggling activity was involved. The search of Miss Thornton was lawful.

 Appellant's next argument is that there was insufficient evidence for the court to find Appellant guilty and that the court should have granted Appellant's Motion for Judgment of Acquit-

tal. This contention is based primarily upon the fact that the events of the November arrest, and the evidence produced therefrom, were used by the Government in its second case against the Appellant. He argues that the efficacy of the second conviction rests upon the soundness of the first conviction and that since the first must fall, then so must the second. The argument fails for lack of a basic premise because the search which gave rise to the first conviction was proper

An examination of the record discloses substantial material evidence to sustain the findings of guilt.

Affirmed.